# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| WALTER R. LEWIS,<br><br>Petitioner,<br><br>vs.<br><br>NANCY BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent, | Case No.: 4:18-cv-00017-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Walter R. Lewis's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

On March 11, 2014, Walter R. Lewis ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 1, 2012. This claim was initially denied on July 31, 2014 and, again, on reconsideration on October 9, 2014. On December 3, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 6, 2016, ALJ Lloyd E. Hartford held a video hearing from Billings, Montana, at which time Petitioner, represented by attorney Brad D. Parkinson, appeared and testified (in Pocatello, Idaho). Anne T. Arrington, an impartial vocational expert, also appeared and testified at the same May 6, 2016 hearing.

On July 27, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council and, on September 29, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action on January 10, 2018, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Docket No. 1). Specifically, Petitioner claims that the ALJ erred in determining that he does not have a severe impairment. *See* Pet.'s Brief, p. 2 (Docket No. 16) ("Contrary to this finding, the evidence does support a finding of severe impairments and the Commissioner's decision is not supported by substantial evidence."). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 10; *see also* Pet. for Review, p. 2 (Docket No. 1).

## II. **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and

nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.   Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since September 1, 2012, the alleged onset date." (AR 17).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following

**MEMORANDUM DECISION AND ORDER - 4**

medically determinable impairments: "fracture of the left heel; right shoulder rotator cuff tear and right acromioclavicular (AC) joint osteoarthritis; deep vein thrombosis (DVT)." (AR 17). However, the ALJ went on to conclude that:

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

*Id*.

Owing to the absence of a severe impairment, the ALJ did not consider the third, fourth, and fifth steps of the sequential process and concluded that Petitioner "has not been under a disability as defined in the Social Security Act from September 1, 2012, through the date of this Decision." (AR 21) (internal citations omitted).

**B.     Analysis**

Petitioner argues that the ALJ erred when he found his medically determinable impairments were non-severe. He argues that the injuries to his left heel and right shoulder, combined with prior pulmonary emboli, preclude him from performing basic work activities and, thus, should be considered medically severe impairments at step two of the sequential process. *See generally* Pet.'s Brief, pp. 7-10 (Docket No. 16) ("Substantial evidence does not support the ALJ decision in this matter. [Petitioner] has permanent impairment and limitations in his left heel, his right shoulder, and his deep vein thrombosis. He is limited in sitting, standing, and weight bearing. All of which satisfy the 'severe medical impairment' at step two.").

As noted above, at step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. *See Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)). The Commissioner's regulations provide that "[a]n impairment or combination of

impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. But, as importantly, the regulation must not be used to prematurely disqualify a claimant. *See id.* at 158 (O'Connor, J., concurring). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted).

In this case, the ALJ found that Petitioner's medically determinable impairments were not severe, accepting and adopting the opinion of the two non-examining consulting physicians, Robert Vestal, M.D., and Thomas Coolidge, M.D. *See* AR 20 (citing (AR 76-81, 83-90)). Drs. Vestal and Coolidge reviewed all available medical records and determined that Petitioner "is without evidence of a severe physical impairment which would prevent work-related activities." (AR 79, 87). Because these doctors conducted a "thorough review of the available medical

**MEMORANDUM DECISION AND ORDER - 6**

records" and have a "comprehensive understanding of agency rules and regulations," the ALJ gave their opinions "significant weight." (AR 20); *see also Thomas v. Barnhart*, 278 F.3d 977, 957 (9th Cir. 2002) (opinions of non-treating or non-examining physicians may also serve as substantial evidence when opinions are consistent with independent clinical findings or other evidence in record); 20 C.F.R. § 404.1527(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical sources is familiar with the other information in your case record are relevant factors that we consider in deciding the weight to give to a medical opinion.").

As to the relevant medical evidence in the record, the ALJ made reference to Petitioner's orthopedic surgery with pin placements and casting on his left heel in 1995 (preceding his alleged onset date by approximately 17 years) (*see* (AR 19)),[1] but also noted the following relevant *post-onset* date medical records which the ALJ said described a more-limited extent of Petitioner's impairments:

- **July 3, 2013:** David Chamberlain, D.O., performs a physical examination of Petitioner following unrelated hernia surgery, noting that he is "is having minimal pain" and "ambulating well." (AR 266).

- **July 19, 2014:** Petitioner presents to Ralph D. Eckard, M.D., complaining of "left heel pain with prolonged standing or excessive walking." (AR 308). Following the physical examination, Dr. Heckard observed:

  > GENERAL MUSCULOSKELETAL AND CEREBELLAR: Examination of the left heel region reveals mild calcaneal compression tenderness. There is mild flattening of the heel and arch. There is no measured shortening from the heel to the inferior patellar margin. There is no swelling of the left heel. There is no crepitus and the ankle is stable to examination. There are otherwise no joints with palpation tenderness. There are no joint effusions.

---

[1] Likewise, the ALJ recognized "a history of [deep vein thrombosis] and two embolisms, in 1999 and 2004 respectively." (AR 20); *see also infra* (discussing effect of pre-alleged onset date medical records compared to (absence of) post-alleged onset date medical records).

**MEMORANDUM DECISION AND ORDER - 7**

> There are no joints with swelling, redness, increased warmth. The patient is able to lift and carry light objects. Digit-to-digit testing is accomplished without difficulty or dyscoordination. Fine manual motor dexterity is intact. The patient is able to rise from a sitting position without assistance and the patient had no difficulty getting up and down from the supine position on the examination table. The patient is able to perform a partial squat without assistance. The patient can rise on heels and rise on toes. Heel-to-toe is accomplished without difficulty or dyscoordination. Heel-to-shin testing is accomplished without difficulty or dyscoordination.
>
> . . . .
>
> IMPRESSIONS: On clinical examination today the patient has left heel region compression tenderness. There is mild flattening of the heel contour and the ranges of motion at the ankle are mildly reduced. His gait and station testing are intact and he displays no favoring of the left lower extremity. There are no deficits of motor, sensory or reflex functions of the lower extremities. The reminder of the musculoskeletal examination reveals intact ranges of motions and strengths. Gait and station are intact. He uses padded orthotics in his shoes. There is no measured muscular asymmetry or atrophy. He is able to sit, stand and walk unassisted and he can handle objects with both gross and fine manual motor dexterity. . . . . He is currently on preventative anticoagulation therapy and the general medical examination reveals no evidence of thrombotic disease or medication-related side effects.
>
> X-RAY READING: X-Rays of the left ankle demonstrate degenerative changes of the talocalcaneal joint. There is narrowing of the joint spacing with lipping and osteophytic extension of the posterior articulation. There is flattening of the calcaneus at the anterior articulation with bony hypertrophic extension from the neck and sulcus of the talus. The ankle mortise spacing is preserved and there are no osseous abnormalities of the talotibial or talofibular joints.

(AR 310-12).

- **November 2, 2015:** Petitioner presents to Gregory Biddulph, M.D., with complaints of right shoulder pain. *See* (AR 332). Dr. Biddulph recommended that Petitioner have an MRI "to make a plan for his care." (AR 334).

- **November 9, 2015:** MRI of Petitioner's right shoulder shows a "[r]ight shoulder rotator cuff tear involving both the supraspinatus and infraspinatus

- tendons with a.c. joint osteoarthritis." (AR 337). Dr. Biddulph recommends surgery. *See id.*²

- **November 30, 2015:** Following November 21, 2015 surgery, Petitioner presents to Dr. Biddulph for follow-up, reporting that "[t]hings have been going well" and that "[p]ain is controlled." (AR 338). Dr. Biddulph recommends physical therapy. *See id.*

- **December 28, 2015:** Petitioner presents to Dr. Biddulph for five-and-a-half week post-operative follow-up, reporting "no pain at rest." (AR 339). Dr. Biddulph observes that the rotator cuff repair and distal clavicle excision were doing well, while recommending continued physical therapy and placing a no-lifting restriction on Petitioner. *See id.*

- **January 20, 2016:** Chris Rigby, D.P.T., reported to Dr. Biddulph that physical therapy was only slightly improving Petitioner's pain and mobility. *See* (AR 348) ("Despite our best efforts with modalities, exercises, and aggressive stretching, he continues to have poor ROM, dominated mainly by a firm/stiff end-feel and significant pain.").

- **February 8, 2016:** Petitioner presents to Dr. Biddulph, reporting that his "shoulder is slowly improving although he is still having quite a bit of pain, especially at night," and that "[h]e has a lot of complaints about his physical therapy." (340). Dr. Biddulph recommends that Petitioner stop physical therapy and assess his condition/progress in two weeks. *See id.*

- **February 22, 2016:** Petitioner presents to Dr. Biddulph, reporting that his shoulder "continually improved over the last two weeks"; that "he is doing much better"; and that "he feels better than prior to surgery" and "has less pain and more function than prior to surgery." (AR 342). Dr. Biddulph notes that Petitioner's right shoulder was stable without pain to palpation, and the range of motion in the right shoulder was smooth and active. *See id.* Dr. Biddulph recommends that Petitioner continue to advance his activity and physical therapy, noting that "[h]e appears headed towards an excellent result." *Id.*

(AR 19-20).

The ALJ also found that Petitioner's daily activities are inconsistent with a finding of disability. *See* (AR 19) ("The claimant has described daily activities which are not limited to the

---

² Petitioner had surgery on November 21, 2015, suggesting that the symptoms associated with Petitioner's right should pain were indeed genuine. According to the ALJ, "this fact would normally weigh in the claimant's favor," however is "offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms." (AR 20); *see also id.* (discussing post-operative reports from Dr. Biddulph); *infra* (same).

**MEMORANDUM DECISION AND ORDER - 9**

extent one would expect, given the complaints of disabling symptoms and limitations."). For instance, the ALJ noted that Petitioner maintains the ability to attend to his personal care, prepare meals, do housework and yardwork, and care for his elderly mother. *See* (AR 19) (citing (AR 41, 214-21)); *see also* (AR 269) (Dr. Chamberlain noting in June 2013 that "[p]atient has been doing a lot of yard work recently" and lists occupation as "heavy lifting"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (where claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

Additionally, the ALJ pointed out that Petitioner continued to work after his onset date as a cook. *See* (AR 19); *see also* (AR 38) (Petitioner testifying that job involved "[f]ood preparation and service, running the cash register, cleaning tables, filling the salad bar, general cafeteria work, cleaning up the cafeteria afterwards").[3] And, while such work did not constitute "disqualifying substantial gainful activity" at step one of the sequential process, the ALJ commented that "it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (AR 19); *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Petitioner argues that the medical record contains evidence showing that his physical impairments are more profound than the ALJ believes. For example, he references treatment notes showing how:

- following a 1995 percutaneous pinning, "[h]is [ankle] position is not perfect;

---

[3] Moreover, Petitioner did not stop working as a cook in March 2015 because of any allegedly-disabling impairment; he stopped working because the facility where he was working underwent a renovation and had closed. *See* (AR 19) (citing (AR 38-39)).

**MEMORANDUM DECISION AND ORDER - 10**

- his heel "will always be tender somewhat," "will be widened," and "certainly will not be normal";

- his injuries "tend to be quite significant with marked swelling and potential disability" and that he "still has a significant amount of disability . . . six months post injury";

- he "certainly will have a permanent impairment and this should be based on the significant trauma to the os calcis, dysfunction of the gastric mechanism, the subtalar arthritis with decreased range of motion";

- "this injury will give him continued difficult if he is on his feet for extended periods of time or on rough uneven surfaces";

- his medical restrictions (minimal walking, avoiding ladders, and needing intermittent breaks) have become permanent;

- "[h]is activities will be permanently affected as far as job duties he will be able to perform," rated out "at a level of 5 percent whole person impairment"; and

- "[h]e has a chronic problem with his left foot which has prevented him from being able to stand or walk for any period of time for multiple years."

Pet.'s Brief, pp. 3-4 (Docket No. 16) (citing (AR 313-21)).

This evidence, however, exists in the years *before* his alleged onset date, as the ALJ commented in lending them only "very little weight" because such information was "extremely remote to the current disability evaluation period." (AR 20-21). "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Rogal v. Colvin*, 590 Fed. Appx. 667, 670 (9th Cir. 2015) (stating that opinion of treating physician who did not treat claimant after alleged onset date was irrelevant to disability determination, and thus ALJ correctly excluded it); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (affirming ALJ's rejection of evidence in part because it was dated prior to relevant time period); *Douglas v. Astrue*, 2012 WL 4485670 (D. Or. 2012) (finding that ALJ's consideration of medical evidence that significantly predated claimant's alleged onset date was erroneous); *Ingham v. Astrue*, 2010 WL 1875651, at *3 (C.D.

**MEMORANDUM DECISION AND ORDER - 11**

Cal. 2010) ("[M]edical opinions of any physician, treating or examining, which predate the alleged onset of disability are not considered substantial evidence.").[4]

In contrast, there are no records of similar evidence in the period following Petitioner's alleged onset date (except those discussed *supra* from Drs. Chamberlain, Heckard and Biddulph). *See* (AR 19) (ALJ reasoning: "Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating source. *Yet a review of the record in this case reveals no recent standing or sitting restrictions recommended by the treating sources. Therefore, claimant's alleged severity and limitations of his left heel are inconsistent with physical examinations and treatment recommendations in the record.*") (emphasis added); *see also* (AR 20) (as to Petitioner's deep vein thrombosis and embolisms, ALJ commenting that severity and limiting effects alleged by Petitioner "are inconsistent with the longitudinal record and recommendations of treating sources" because: (1) Petitioner reported to Dr. Heckard that he has not had a deep vein thrombosis episode in over ten years; (2) the record reveals that Petitioner's treatment has been generally successful in controlling his alleged symptoms without any negative side effects; and (3) the record is absent of any deep vein thrombosis episodes in the last ten years or any recent sitting limitations). A physical impairment must be established by objective medical evidence from an acceptable medical source before the ALJ can determine whether the impairment or combination of impairments is severe. *See* 20 C.F.R. § 416.921. A diagnosis, without more, is insufficient to establish a severe impairment. *See Febach v. Colvin*,

---

[4] Even so, the record established that Petitioner has consistently worked from 1998 through 2015 in various positions, including sales associate (1994-1999), customer service representative (2003-2004), broadband coordinator (2000-2002, 2005), assembly line worker (2006-2007), and cook (2008-20015). *See* (AR 38-39, 183, 191); *but compare with* (AR 202-13) (Petitioner listing only sales associate job in the "15 years before [he] became unable to work because of [his] illnesses, injuries, or conditions").

**MEMORANDUM DECISION AND ORDER - 12**

580 Fed. Appx. 530, 531 (9th Cir. 2014) (finding diagnosis of depression alone insufficient for finding "severe" impairment).

In short, to establish a severe impairment, Petitioner needed to demonstrate that his understood medically determinable impairments affect his ability to perform basic work activities during the relevant period. *See supra*. Based on the record before the Court, Petitioner has not met this standard. At best, there are threads of medical evidence that could be interpreted as suggesting the existence of a severe medical impairment. But this is somewhat beside the point. The ALJ's opinion need not be supported by overwhelming evidence or even a preponderance of the evidence; it is enough if it is supported by substantial evidence. And here it is.[5] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation); *see also infra*, (citing *Flatten*, 44 F.3d at 1457 (same) and *Key*, 754 F.2d at 1549 (same)). Had there been more supporting medical evidence post-alleged onset date, or had Petitioner been unable to work following the restrictions imposed before the alleged onset date (and allegedly existing beyond the alleged onset date itself), the landscape from which to judge the ALJ's disability determination would be different. However, on this record, it cannot be said that the ALJ erred in concluding that Petitioner does not have a severe impairment or combination of impairments.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d

---

[5] The medical evidence that exists (and just as importantly doesn't exist) during the relevant time frame, alongside Petitioner's daily activities (*see supra*), also represent both specific and clear and convincing reasons for rejecting Petitioner's testimony and third-party statements. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 13**

at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: March 29, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge